NVE CONSTRUCTORS, INC.,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

Laborers' International Union of North
America, Local No. 1184, Intervenor.

No. 89–70477.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1991.

Decided June 6, 1991.

John W. Prager, Jr., Thierman, Cook, Brown & Prager, Santa Ana, Cal., for petitioner.

Margaret G. Bezour and Laurence S. Zakson, N.L.R.B., Washington, D.C., for respondent.

Walter Kamiat, Laurence Cohen, Sherman, Dunn, Chen, Leifer & Yellig, Washington, D.C., and Anthony Segall, Reich, Adell & Crost, Los Angeles, Cal., for intervenor.

Before CHAMBERS, BEEZER and KOZINSKI, Circuit Judges.

BEEZER, Circuit Judge:

NVE Constructors petitions for review of a NLRB decision dismissing its complaint against Laborers' Local Union No. 1184. The Board held that section 8(b)(7)(C) of the National Labor Relations Act was not violated where the union, which was not certified, picketed for less than thirty days to force NVE to enter into a prehire agree-ment. We deny the petition for review and affirm the Board's decision.

I

From January 5 to January 14, 1988, Laborers' International Union of North America, Local No. 1184 (the Union) picketed the construction site where NVE Constructors, Inc. (NVE) was a general contractor on a state prison project. At the gate reserved for NVE employees, the Union displayed picket signs that stated: "NVE, No Contracts, Laborers' Local 1184, AFL–CIO." As a result of the picketing, NVE did not receive deliveries of concrete scheduled for January 5–7, 1988.

At the time of the picketing, NVE was not a party to a collective-bargaining agreement with the Union. There were 20 NVE employees at the jobsite, but those employees had not designated the Union as their bargaining representative. According to the Union's business agent, the purpose of the picketing was "to obtain a contract either by authorization from the people through authorization cards or the contractor or contractors signing a prehire agreement voluntarily."

The picketing stopped on January 13, 1988, after NVE filed an unfair labor practice charge, alleging a violation of section 8(b)(7)(C) of the National Labor Relations Act, (the Act), 29 U.S.C. § 158(b)(7)(C) (1988). The Board's General Counsel issued a complaint based on the charges filed by NVE. After a brief hearing, the parties submitted the case directly to the Board, to be decided on the basis of the facts contained in the transcripts of the hearing. The Board dismissed the complaint, concluding that "at least with respect to an employer, which has employees, we do not believe that recognitional and organizational picketing by a minority union in the construction industry is prohibited by Section 8(b)(7)(C) of the Act if the picketing meets the time limitations set forth in that section." *Laborers Local 1184 (NVE Constructors)*, 296 NLRB No. 165, 132 LRRM 1273, 1278 (1989). NVE petitioned for review.

**1086**

## II

The National Labor Relations Board "has the primary responsibility for developing and applying national labor policy," and its rules are accorded "considerable deference." *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 110 S.Ct. 1542, 1549, 108 L.Ed.2d 801 (1990) (citations omitted). We must uphold a Board rule "as long as it is rational and consistent with the Act, even if we would have formulated a different rule had we sat on the Board." *Id.* (citations omitted). "Furthermore, a Board rule is entitled to deference even if it represents a departure from the Board's prior policy." *Id.* (citing *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 265–66, 95 S.Ct. 959, 967–68, 43 L.Ed.2d 171 (1975) ("The use by an administrative agency of the evolutional approach is particularly fitting. To hold that the Board's earlier decisions froze the development of this important aspect of the national labor law would misconceive the nature of administrative decisionmaking.")).

## III

Section 8(b)(7) of the Act makes it an unfair labor practice for a union to picket to force an employer to recognize or bargain with it if the employer has already recognized another union or if there has been a representation election within the preceding twelve months. 29 U.S.C.

1. Section 8(b) provides, in relevant part:
   It shall be an unfair labor practice for a labor organization or its agent ...
   (7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:
   (A) where the employer has lawfully recognized ... any other labor organization ...
   (B) where within the preceding twelve months a valid election ... has been conducted, or
   (C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable peri-

§ 158(b)(7)(A), (B) (1988).[1]   If neither of these situations exist, such picketing may be conducted for "a reasonable period not to exceed thirty days from the commencement of such picketing to gain recognition." *Id.* § 158(b)(7)(C). The union may not picket beyond this time without filing a petition for a representation election. *Id.*

The purpose of section 8(b)(7) is "to ensure that employees [are] free to make an uncoerced choice of bargaining agent." *NLRB v. Iron Workers' Local 103*, 434 U.S. 335, 346, 98 S.Ct. 651, 658, 54 L.Ed.2d 586 (1978). This was accomplished in section 8(b)(7)(C) by encouraging "prompt resort to the Board's election machinery, rather than protracted picketing, as the method for resolving questions concerning representation." *Retail Clerk's Local 1407*, 215 NLRB 410, 1974–75 CCH NLRB ¶ 15304 (1974) (citing *Dayton Typographical Union v. NLRB*, 326 F.2d 634, 636–37 (D.C.Cir.1963)).

Section 8(f) of the Act provides that it is not an unfair labor practice for unions and employers in the construction industry to enter into collective-bargaining agreements even though the employees of that employer have not designated the union as their lawful bargaining representative.[2] These agreements are known as "prehire agreements."

od of time not to exceed thirty days from the commencement of such picketing.
29 U.S.C. § 158(b) (1988).

2. Section 8(f) provides, in relevant part:
   It shall not be an unfair labor practice ... for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members ... because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement ... *Provided* ... [t]hat any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title.
   29 U.S.C. § 158(f) (1988).

■ Under section 13 of the Act, a labor statute must not be interpreted to restrict the right to picket "unless the congressional purpose to give it that meaning persuasively appears either from the structure or history of the statute." *NLRB v. Drivers, Chauffeurs, Helpers, Local Union No. 639 (Curtis Bros.)*, 362 U.S. 274, 282, 80 S.Ct. 706, 711, 4 L.Ed.2d 710 (1960).[3] Neither section 8(b)(7) nor section 8(f) explicitly prohibits picketing to obtain a prehire agreement. Furthermore, because Congress has "dealt explicitly with isolated evils which experience has established flow from such picketing," *see, e.g.*, § 8(b)(7)(A), (B), 29 U.S.C. § 158(b)(7)(A), (B) (1988), we may infer limitations not explicitly provided for in the statute only if there is "the clearest indication in the legislative history" of Congress' intent to create a limitation. *See Curtis Bros.*, 362 U.S. at 284, 80 S.Ct. at 712.

■ The failure to authorize the use of picketing does not necessarily imply a prohibition against picketing.[4] *See Donald Schriver, Inc. v. NLRB*, 635 F.2d 859, 868 n. 11 (D.C.Cir.1980) (That Congress "did not intend to authorize minority construc-

tion unions to strike, picket or otherwise coerce employers to sign § 8(f) agreements . . . can mean no more than that a union may not picket in excess of 30 days without filing a petition for an election . . . [t]hus the coercion employed to secure the § 8(f) agreements (such as the 10 day picketing of [the employer] ) did not violate the Act." (Quotation omitted.)). Other evidence relevant to an implicit prohibition against picketing to obtain a prehire agreement is ambiguous.[5] Therefore, we must defer to the Board's interpretation of the statute if it is rational and consistent with the Act. *Curtin Matheson*, 110 S.Ct. at 1549.

■ The Board's interpretation does not violate the intention of the Act to leave " 'the discussion between the employer and the employee, and the agreements which they may or may not make, voluntary.' " *See H.K. Porter Co. v. NLRB*, 397 U.S. 99, 103–04 & n. 2, 90 S.Ct. 821, 823–24 & n. 2, 25 L.Ed.2d 146 (1970) (quoting 79 Cong. Rec. 7659). Economic pressure is often used in the context of labor disputes to reach what are often termed "voluntary" agreements. The Supreme Court recognized this in *H.K. Porter*, where, after reiterating the purpose of the Act to facilitate

---

3. Section 13 provides:

"Nothing in this Act, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right." 29 U.S.C. § 163 (1988). "Picketing has been equated with striking for the purposes of § 13." *Curtis Bros.*, 362 U.S. at 281 n. 9, 80 S.Ct. at 710 n. 9 (citing *NLRB v. International Rice Milling Co.*, 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1277 (1951)).

4. The Supreme Court has noted the same thing. In interpreting Title VII of the Civil Rights Act of 1964, which "bars sex-based wage discrimination claims ... where the pay differential is 'authorized,' 42 U.S.C. § 2000e–2(h) (1988), the Court noted that "[a]lthough the word 'authorize' sometimes means simply 'to permit,' it ordinarily denotes affirmative enabling action." *County of Washington v. Gunther*, 452 U.S. 161, 169, 101 S.Ct. 2242, 2247, 68 L.Ed.2d 751 (1981) (citing Black's Law Dictionary 147 (1976) and Webster's Third New International Dictionary 147 (1976)).

5. For example, Senator Kennedy stated that [i]t was not the intention of the [conference] committee to require by [section 8(f) ] the mak-

ing of prehire agreements, but, rather, to permit them; nor was it the intention of the committee to authorize a labor organization to strike, picket, or otherwise coerce an employer to sign a prehire agreement where the majority status of the union had not been established. The purpose of this section is to permit voluntary prehire agreements."
II *Legislative History of the Labor–Management Reporting and Disclosure Act of 1959* (1959) at 1715 (*Leg.Hist.*). Representative Thompson, on the other hand, stated:

With respect to the phrase in the last paragraph of the [House Conference Report] that nothing in section [8(f) ] is intended "to authorize the use of force, coercion, strikes, or picketing to compel any person to enter into such prehire agreements," I would state that literally speaking, the above quoted phrase is not incorrect. However, it should be entirely clear that there is no language in the conference report which justifies any implication that section [8(f) ] is intended to deny the right of a union to strike or to picket for a legal object, such as a prehire agreement in the building and construction industry which is validated by section [8(f) ].
*Id.* at 1721.

voluntary agreements, it stated that "[i]t cannot be said that the Act forbids an employer or a union to rely ultimately on its economic strength to try to secure what it cannot obtain through bargaining." *Id.* at 109, 90 S.Ct. at 826. *See also NLRB v. American Nat. Ins. Co.,* 343 U.S. 395, 402, 72 S.Ct. 824, 828, 96 L.Ed. 1027 (1952) (The basic "theory of the Act is that the making of voluntary labor agreements is encouraged by protecting employees' rights to organize for collective bargaining.").[6]

Furthermore, at the same time it enacted section 8(f), Congress included a provision protecting employers from being pressured to enter into agreements with minority unions. If the picketed employer doubts that the union enjoys the support of a majority of its employees, the employer may file an election petition. *See* NLRA § 8(b)(7)(C), 29 U.S.C. § 158(b)(7)(C) (1988). When an election petition is filed in a situation in which a non-certified union is picketing, the Board must direct an expedited representation election, without first investigating the petition to determine whether a question of representation exists. *See id.* §§ 8(b)(7)(C), 9(c), 29 U.S.C. §§ 158(b)(7)(C), 159(c) (1988). If the election demonstrates that a majority of the employees do not support the union, section 8(b)(7)(B) bars the union from picketing for twelve months. 29 U.S.C. § 158 (b)(7)(B) (1988).

NVE argues that the effect of the Board's decision is to legalize the "very top-down organizing weapon Congress condemned in enacting" section 8(b)(7)(C). The Supreme Court has recognized that "[o]ne of the major aims of the 1959 Act was to limit 'top-down' organizing campaigns, in which unions used economic weapons to force recognition from an employer regardless of the wishes of his employees." The use of picketing was of particular concern as a method of coercion in three specific contexts: where employees had already selected another union representative, where employees had recently voted against a labor union, and where employees had not been given a chance to vote on the question of representation. Picketing in these circumstances was thought impermissibly to interfere with the employees' freedom of choice.

*Iron Workers,* 434 U.S. at 346–47, 98 S.Ct. at 658 (quoting *Connell Constr. Co. v. Plumbers' and Steamfitters' Local 100,* 421 U.S. 616, 632, 95 S.Ct. 1830, 1840, 44 L.Ed.2d 418 (1975)). However, in *Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982), the Supreme Court determined that the top-down effects of section 8(e), 29 U.S.C. § 158(e) (1988), which allows agreements restricting subcontracts in the construction industry to those subcontractors that have signed collective-bargaining agreements with the union, were not sufficient to invalidate such subcontracts. The Court explained that "[t]he bare assertion that a particular [practice] encourages top-down organizing pressure does not resolve the issue we confront in these cases: how much top-down pressure did Congress intend to tolerate?" In the case of section 8(f), Congress acted to limit the potential top-down effects of allowing prehire agreements by allowing employees to invalidate a prehire agreement by petitioning for a representation or decertification election at any time during the period covered by the agreement. 29 U.S.C. § 158(f) (1988).

None of the cases cited by NVE in support of its position addresses picketing to obtain a prehire agreement. In fact, two of those cases support the Board's position that the purpose of section 8(b)(7)—to ensure that employees may freely choose

---

**6.** Examination of section 8(e) demonstrates that "voluntary" agreements may be reached through the use of economic pressure. Section 8(e) gives construction unions and employers a unique right to enter into agreements barring construction contractors from hiring subcontractors who are not parties to the applicable collective-bargaining agreement. *See* 29 U.S.C. § 158(e) (1988). Despite the characterization of these agreements as "voluntary," *see* II *Leg.Hist.* at 1715, the courts and the Board have permitted picketing to obtain them. *See, e.g., Construction, Production & Maintenance Laborers' Union v. NLRB,* 323 F.2d 422 (9th Cir.1963); *Northeast Indiana Building & Constr. Trades Council,* 148 NLRB 854 (1964), *enf. denied on other gnds.,* 352 F.2d 696, 698 (D.C.Cir.1965).

their bargaining representative—is not undermined by allowing unions to picket to obtain a section 8(f) agreement. In *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983), the Supreme Court held that an employer's monetary obligations to an uncertified labor union, incurred pursuant to a section 8(f) agreement, survived the repudiation of the agreement by the employer. *Id.* at 271–72, 103 S.Ct. at 1759. The Court noted that although section 8(f) does affect the right of employees to select their own bargaining representative "by allowing a minority union to reach an agreement with the employer setting the terms and conditions of employment," *id.* at 268, 103 S.Ct. at 1758, this is the intended consequence of section 8(f) and is "limited by the final proviso ... that permits employees ... to challenge a prehire agreement at any time by petitioning the Board for a representative election." *Id.* [7]

Similarly, in *Mesa Verde Constr. Co. v. Northern Cal. District Council of Laborers*, 861 F.2d 1124 (9th Cir.1988), we explicitly rejected the contention that allowing employers to repudiate prehire agreements unilaterally would protect employees' "free-choice" rights. 861 F.2d at 1132. We based our decision in part on the fact that the right of employees freely to choose their bargaining representative is explicitly protected by the provisions of section 8(f) allowing employees to petition at any time to "either fully certify a union under 9(a) or to decertify their putative union." *Id.* at 1132–33. [8]

The Board has determined that picketing to obtain a prehire agreement violates section 8(b)(7)(C) where the construction employer has no employees at the jobsite. NVE contends that such a distinction is not reasonable.

In *Cleveland Bldg. & Constr. Trades Council*, 297 NLRB No. 47, 133 LRRM 1065 (1989), the Board explained the reason for making such a distinction. Citing its decision in the present case, the Board concluded that because "the policy underlying Section 8(b)(7)(C)—permitting picketing for a reasonable period of time (not to exceed 30 days) until the union files a petition [for a representation election]—would not be effectuated" where there are no employees, "no valid question concerning representation could be presented and, therefore, a union could not file a valid 9(c) election petition." *Id.* at 1065 (citing *Laborers Local Union No. 1184 (NVE Constructors)*, 296 NLRB No. 165, 132 LRRM 1273 (1989)). In light of the fact that the purpose underlying section 8(b)(7) is to ensure that employees may freely choose their bargaining representatives, *see Iron Workers*, 434 U.S. at 346, 98 S.Ct. at 658, it is reasonable to distinguish situations in which there are employees, in which case the employer is protected by being able to petition for an expedited election, from those in which there are not.

Finally, NVE cites language from previous Board decisions suggesting that picketing to obtain a prehire agreement violates section 8(f). *See, e.g., Deklewa v. International Ass'n of Bridge, Structural and Ornamental Ironworkers, Local 3*, 282 NLRB 1375, 1986–87 NLRB Dec. (CCH)

---

**7.** Although the Court also stated that the right of employees to select their bargaining representative would be undermined to an unacceptable degree if "an employer could be compelled by picketing to treat a minority union as the exclusive bargaining agent of employees," that statement does not address the present situation, because entering into a section 8(f) prehire agreement does not make the union the employees' bargaining representative. *See Iron Workers*, 434 U.S. at 346, 98 S.Ct. at 658 ("Absent [majority credentials] ... the union's entitlement to act as the exclusive bargaining agent had never matured.").

**8.** We noted the Board's policy that "'[a] vote to reject the signatory union will void the 8(f) agreement and will terminate the 8(f) relationship.'" *Mesa Verde*, 861 F.2d at 1133 n. 10 (quoting *Deklewa v. International Ass'n of Bridge, Structural and Ornamental Ironworkers, Local 3*, 282 NLRB 1375, 1986–87 NLRB Dec. (CCH) ¶ 18,549 at 31,709 (1987), *enf'd*, 843 F.2d 770 (3d Cir.1988)).

Although we adopted the Board's rule established in *Deklewa*, we did not either discuss the propriety of union picketing to obtain a prehire agreement or, as NVE implies, accept the Board's statements in *Deklewa* regarding picketing.

¶ 18,549 (1987) ("[T]he union is not entitled to engage in any coercive conduct, including strikes and picketing, to force the [employer] to execute a successor 8(f) agreement."), enf'd, 843 F.2d 770 (3d Cir.1988). In the present case, however, the Board explicitly stated:

> We now hold that these statements are inaccurate and conclude that a correct statement of the law is that an employer must be free at all times from any *unlawful* coercion (as manifested for example by *unlimited* picketing), in order to ensure that an agreement entered into pursuant to Section 8(f) is 'voluntary' within the meaning of that Section.

*NVE Constructors*, 132 LRRM at 1277 (emphasis in original). We have recognized that "[a]n administrative agency is not disqualified from changing its mind; and when it does, the courts still sit in review of the administrative decision and should not approach the statutory construction issue *de novo* and without regard to the administrative understanding of the statutes." *Mesa Verde*, 861 F.2d at 1130 (quoting *Iron Workers*, 434 U.S. at 351, 98 S.Ct. at 660–61).

■ The Board's interpretation of sections 8(b)(7)(C) and 8(f) is "rational and consistent with the Act."

### IV

The Board explained that it has generally defined a "reasonable period of time" as 30 days, except in very limited circumstances, i.e., picketing accompanied by violence or other misconduct on the picket line, [*see, e.g., Eastern Camera Corp.*, 141 NLRB 991, 999 (1963)] and picketing to secure recognition where the Act itself prohibits certification of the picketing union. [*See, e.g., Teamsters Local 639 (Dunbar Armored Express)*, 221 NLRB 1240 (1975), enf'd, 553 F.2d 1368 (D.C.Cir.1977).] The Board has also held that a union cannot picket for an agreement where the employer does not currently employ any employees in the unit sought. [*See Operating Engineers' Local 542 (Noonan, Inc.)*, 142 NLRB 1132 (1963), enf'd, 331 F.2d 99 (3d Cir.1964).]

*NVE Constructors*, 132 LRRM at 1274 (citations originally in footnotes). By moving immediately from this statement into a consideration of whether it should create a new exception applicable to the facts of this case, *see id.*, the Board implicitly concluded that none of these exceptional circumstances is present here.

The Board's statement of the general rule regarding a reasonable time is consistent with its prior decisions and with the policy underlying section 8(b)(7). In *Laborers' Local 1290 (Walters Foundation)*, 203 NLRB 397, 1973 CCH NLRB ¶ 25327 at 32627, the Board stated that "findings of violations where picketing has occurred less than 30 days are limited to those cases involving unusual circumstances in connection with picketing, such as when the picketing is accompanied by threats or acts of violence." *See also Tropicana Lodge*, 172 NLRB 419, 423–24, 1968–2 CCH NLRB ¶ 20004 (1968) (The reasonable period is "usually considered to be 30 days.").

Section 8(b)(7)(C) is intended "to encourage prompt resort to the Board's election machinery, rather than protracted picketing, as the method for resolving questions concerning representation." *Retail Clerk Store Employees' Union Local 1407*, 215 NLRB 410, 1974 CCH NLRB ¶ 15304 (citing *Dayton Typographical Union v. NLRB*, 326 F.2d 634, 636–37 (D.C.Cir. 1963)). The Board has explained that shortening the time allowed for picketing is necessary where the employer's right to implement the expedited election process[9] is effectively negated by the union's conduct:

> "Under established Board policy the representation election will not be held until the effects on the employees of unlawful

---

9. Although the statute allows non-certified unions to picket for up to thirty days without filing a petition, an employer may cause an election to happen at any time after the picketing begins simply by filing the petition for an expedited election allowed by the final proviso of section 8(b)(7)(C). *See* 29 U.S.C. § 158(b)(7)(C) (1988).

conduct on the part of [the union] have been dissipated. It would be anomalous to hold that respondents may picket until such time as a free election may be held, where [the union's] conduct has precipitated the delay."

*Eastern Camera,* 1963 CCH NLRB at 19075 (quoting *Cuneo v. United Shoe Workers (Q.T. Shoe Mfg. Co.),* 181 F.Supp. 324 (D.C.N.J.1960)).

■ Where there is violence or misconduct on the picket line, the employer's right to resort to an expedited election is effectively denied because it is unlikely that the election will be truly representative of the employees' wishes. *See id.* The employer's remedy is similarly negated if the Board could not certify the union as the bargaining representative or if there are no employees to vote in an election. Absent some reason that an election would not be possible, however, it is reasonable to determine that the statutory protection of the right to picket, *see* 29 U.S.C. § 163 (1988), should be construed to allow a union to picket for the full thirty-day period permitted by section 8(b)(7)(C).

■ NVE argues that the Board did not sufficiently consider whether the union's picketing was reasonable in the present case, citing the Board's statement in *Eastern Camera* that "Congress intended that the Board should determine what constitutes a reasonable time in each case and that the 30-day limitation was merely an outside limitation." 141 NLRB at 999. NVE points to interruption of work and of concrete deliveries as harmful effects mandating a reasonable period shorter than thirty days.

More serious interference with work has not persuaded the Board to shorten the period. In *Walters Foundation,* 203 NLRB 397, 1973 CCH NLRB ¶ 25327, for example, the Board did not find unreasonable a twenty-two day period of picketing, and in *Colson & Stevens Constr. Co.,* 137 NLRB 1650, 1962 CCH NLRB ¶ 11474, *aff'd in relevant part,* 323 F.2d 422 (9th Cir.1963), the Board found the period of picketing not to be unreasonable where suppliers refused to cross the picket lines for 29 days. Furthermore, nothing in the present case prevented NVE from filing for an expedited election and resolving quickly the issue of the union's majority support. The Board's determination that the picketing did not exceed a reasonable period of time is thus reasonable and supported by the record.

The petition for review of the Board's order is DENIED.